

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-13-00493-CR
### NO. 02-13-00494-CR
### NO. 02-13-00495-CR
### NO. 02-13-00496-CR
### NO. 02-13-00497-CR

THAYER LAWSON                                                      APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NOS. F-2010-0994-D, F-2010-2427-D,
F-2012-2483-D, F-2012-2484-D, F-2012-2485-D

----------

## MEMORANDUM OPINION[1]

----------

Upon his pleas of not guilty and his plea of true to the enhancement count

in each case, a jury convicted Appellant Thayer Lawson of (1) assault–family

---

[1]*See* Tex. R. App. P. 47.4.

violence, impeding breath; (2) harassment of a public servant; (3) kidnapping; (4) aggravated assault; and (5) assault of a public servant and assessed his punishment at confinement for (1) ten years, (2) two years, (3) thirty years, (4) thirty years, and (5) ten years, respectively. The trial court sentenced him accordingly, ordering that the sentences be served concurrently.

In ten issues, Appellant contends that (1) the evidence is insufficient to support his convictions for assault–family violence, kidnapping, and aggravated assault; (2) the trial court violated the Confrontation Clause by admitting hearsay regarding the assault–family violence case; (3) regarding the convictions for assault–family violence, kidnapping, aggravated assault, and assault of a public servant, the evidence was insufficient to allow the jury to find that he had a prior murder conviction, the trial court improperly instructed the jury regarding the enhancement, and trial counsel was ineffective for pleading true to the enhancement; (4) regarding the conviction for harassment of a public servant, the trial court improperly instructed the jury that Appellant had pled true to an enhancement paragraph of attempted murder when no such paragraph existed in the indictment; and (5) regarding the kidnapping conviction, even enhanced, the trial court erred by instructing the jury that they could sentence him in the range of five to ninety-nine years for a second-degree felony, and his trial counsel was ineffective for failing to object to the erroneous instruction. We reverse the trial court's judgment in the assault–family violence case and remand that case for a new trial; we reverse the trial court's judgment in the kidnapping case on

2

punishment only and remand that case for a new punishment trial; and we affirm Appellant's remaining convictions and sentences.

**Summary of the Facts**

The indictment in cause number F-2010-0994-D alleged assault against Tanja M. On March 20, 2010, dispatchers sent Denton police officers to Appellant's home at the Archangel Funeral Home for a welfare check of a woman (Tanja) located inside his residence. Officer Virginia Johnson was the first officer on the scene.

Before allowing Officer Johnson to testify about information given to her by Tanja, the trial court held a hearing outside the presence of the jury to "discuss any excited utterances that [Officer Johnson could] testify to." Appellant objected, stating that the excited utterance exception did not apply because "[i]t seems that everything that was provided to [Officer Johnson] by [Tanja] was testimonial and [was] more responses to questions that she was asked." The trial court overruled the objection.

Officer Johnson testified that when she went to Appellant's residence, she heard an angry male voice inside the residence before knocking on the door. Appellant answered the door and allowed Officer Johnson to enter the residence. Officer Johnson found Tanja inside. According to Officer Johnson, Tanja appeared to have been in a heightened emotional state because she was crying, "was trying to look like she was not crying[,] . . . was kind of . . . hiccuppy, sobbing, kind of holding it in . . . [,] visibly had tears and puffy eyes from crying,

3

and her clothing was torn." Tanja had a large raised area on the side of her face. When Officer Johnson began questioning Tanja about what happened that day, "[Tanja] did not want to openly discuss things." While Officer Johnson was asking Tanja questions, Appellant was yelling in the other room, "[s]o it took a while to get [Tanja to] calm[] down." Officer Johnson noticed that Tanja had a hoarse voice and a faint mark on her neck. Officer Johnson testified that she had to "pointedly ask [Tanja], how did this happen? How did that happen? She wouldn't actually just tell [Officer Johnson] a story about what had happened that evening. It was more specific—[h]ow did you get this mark? How did your coat get torn?—in order to get her to answer . . . ." Tanja told Officer Johnson that Appellant had choked her that night. Tanja did not testify at trial. Photographs of her injuries were admitted.

In July, police were again called to the Archangel Funeral Home for an open door and for an assault. When the officers arrived, Appellant drove up and smelled of alcohol. Officer Baldemar Torres began a driving while intoxicated (DWI) investigation of Appellant and decided to place him under arrest. Because Appellant was uncooperative, Officer Jared Stevenson assisted Officer Torres in the arrest. Appellant spit on Officer Torres's face. Appellant had to be forcefully placed in the squad car. As Officer Torres was closing the Plexiglas window, Appellant spit on Officer Torres again. Officer Torres struck Appellant, and Appellant continued to be uncooperative and to spit. Appellant was indicted for harassment of a public servant in cause number F-2010-2427-D.

4

The indictment in cause number F-2012-2484-D alleged aggravated assault of LaQuandra C. In 2012, Appellant was dating LaQuandra's friend Tammy H. The indictment in cause number F-2012-2483-D alleged aggravated kidnapping of Tammy. Tammy and her daughter often stayed with LaQuandra in her apartment. On August 13, 2012, Tammy and Appellant were arguing and physically hit each other. Appellant tried to get her inside his truck. When Appellant began to hit Tammy, LaQuandra stepped between Appellant and Tammy and then ran upstairs to the apartment and called 9-1-1. LaQuandra testified that Appellant went inside the apartment, grabbed a knife, and cornered her, asking if she had called the police. She testified that she felt that Appellant was going to stab her.

Regarding the kidnapping charge, LaQuandra testified that Appellant forcefully grabbed Tammy by the neck and said, "[L]et's go," and that it appeared that Tammy did not want to go. Tammy testified that Appellant "wanted [her] to go at first, and [she] didn't want to go, [but she was] not forced" to go with him.

Officer Clint Ventrca was dispatched to locate Appellant and Tammy in Appellant's truck. When Officer Ventrca arrived, Appellant had already been stopped and handcuffed. When Officer Ventrca began to adjust one of Appellant's cuffs, Appellant pulled loose and swung at Officer Ventrca. Appellant eventually pushed Officer Ventrca into the car and onto the ground. Another officer came up and used his Taser to help subdue Appellant. Appellant was

5

indicted for assault of a public servant in trial court cause number F-2012-2485-D.

More than eight months before trial, the State filed a notice of its intent to use a prior felony conviction of attempted murder for punishment enhancement. Subsequently, the trial court instructed the jury that Appellant had pled true to the enhancement paragraph in the indictments alleging a prior conviction for attempted murder. The trial court instructed the jury to find the allegation to be true. Consequently, the jury assessed punishment on all charges based upon a prior conviction of attempted murder.

**Hearsay**

In his second issue, Appellant argues that the trial court reversibly erred in admitting Officer Johnson's testimony regarding the assault–family violence allegation. The State concedes that Tanja was not available to testify, that Appellant had no opportunity to cross-examine her, and that the complained-of statement by Tanja was made after Appellant's arrest and in response to a question by Officer Johnson relating to the assault. The State argues, however, that Appellant did not preserve his Sixth Amendment or hearsay objections.

Appellant requested and was granted a hearing outside the presence of the jury regarding Officer Johnson's testimony about Tanja's statements. Appellant argued in the hearing that the statements were hearsay, did not fall into the excited utterance exception, and were testimonial. The trial court overruled his objections in the hearing outside the jury's presence.

6

But, as the State points out, Appellant did not explicitly reference the Confrontation Clause or the Sixth Amendment in the trial court. The complaint made on appeal must comport with the complaint made in the trial court or the error is forfeited.[2] Appellant's constitutional claims regarding Johnson's testimony, raised first on appeal, are therefore forfeited. We overrule this portion of his second issue.

The State is incorrect, however, as to Appellant's hearsay complaints. The law is well established that

> [t]o preserve error, a complaining party must make a timely and specific request, objection, or motion and obtain an express or implied ruling on that request, objection, or motion. Moreover, an objection must be made each time inadmissible evidence is offered *unless* the complaining party obtains a running objection or *obtains a ruling on his complaint in a hearing outside the presence of the jury.*[3]

Appellant's hearsay objections were raised and ruled on in a hearing outside the presence of the jury; they are therefore preserved for appeal.

Officer Johnson testified that Tanja had to calm down so that she could be questioned. Officer Johnson allowed Tanja to go outside to smoke a cigarette.

---

[2]*Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."); *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial.").

[3]*Lopez v. State*, 253 S.W.3d 680, 684 (Tex. Crim. App. 2008) (emphasis added); *see also* Tex. R. App. P. 33.1; Tex. R. Evid. 103(a)(1); *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003).

After Tanja smoked the cigarette and calmed down, Officer Johnson questioned her. Officer Johnson explained at trial that she had asked Tanja leading questions because Tanja was uncooperative. Officer Johnson also admitted that by the time Tanja made the statement that Appellant had choked her, about an hour had elapsed since the police arrived at the home; Appellant had been arrested, taken outside to a police car, and transported to jail; and Officer Johnson had taken pictures of Tanja's injuries and had begun looking at them and discussing them with her. Officer Johnson further testified that taking pictures "was usually the last thing that [she] would do with" complainants.

An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition," or immediately thereafter.[4] Clearly, Tanja's responses to Officer Johnson's questions do not qualify as excited utterances.[5] Just as clearly, they are testimonial.[6] Because the responses were not excited utterances, the trial court abused its discretion by admitting Officer Johnson's testimony recounting Tanja's responses to the questions concerning the source

---

[4] Tex. R. Evid. 803(2); *see Zuliani v. State*, 97 S.W.3d 589, 595–96 (Tex. Crim. App. 2003).

[5] *See Wall v. State*, 184 S.W.3d 730, 743–44 (Tex. Crim. App. 2006).

[6] *See Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 2273–74 (2006); *Crawford v. Washington*, 541 U.S. 36, 57–60, 124 S. Ct. 1354, 1367–69 (2004); *Russeau v. State*, 171 S.W.3d 871, 880 (Tex. Crim. App. 2005), *cert. denied*, 548 U. S. 926 (2006).

8

of Tanja's injuries and the source of Officer Johnson's conclusions regarding the aggravating factor of impeding breath.

Appellant preserved only his hearsay complaint; we must therefore address his complaint as non-constitutional error. We disregard the error unless it affected Appellant's substantial rights.[7] A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.[8] Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect."[9] In this case, the error affected Appellant's substantial rights and was therefore harmful. Johnson's recounting of Tanja's testimonial statements was the only evidence of the impeding of normal breathing, which elevated the assault to a felony.[10] We therefore sustain the remainder of Appellant's second issue.

---

[7]See Tex. R. App. P. 44.2(b).

[8]*King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).

[9]*Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001) (internal quotation marks and citation omitted); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

[10]*See* Tex. Penal Code Ann. § 22.01(b)(2)(B) (West Supp. 2014).

9

**Sufficiency of the Evidence**

**Standard of Review**

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[11] This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[12] The trier of fact is the sole judge of the weight and credibility of the evidence.[13] Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder.[14] Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict.[15] We must

---

[11]*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).

[12]*Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

[13]*See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170.

[14]*Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

[15]*Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution.[16]

We measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge for the case, not the charge actually given.[17] Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.[18] The law as authorized by the indictment means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument.[19]

We must consider all the evidence admitted at trial, even improperly admitted evidence, when performing a sufficiency review.[20] We must do so even

---

[16] *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

[17] *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)); *see Crabtree v. State*, 389 S.W.3d 820, 824 (Tex. Crim. App. 2012) ("The essential elements of the crime are determined by state law.").

[18] *Byrd*, 336 S.W.3d at 246.

[19] *See Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013); *see also Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

[20] *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004).

in a case that we reverse and remand because of error in the admission of evidence.[21]

When the jury is authorized to convict on any one of several theories or methods of commission of the same offense (for example, two different statutory definitions of the same offense) and returns a general verdict of guilt, it does not matter that the evidence is insufficient to sustain one or more of the theories, so long as the evidence is sufficient to sustain conviction under at least one theory.[22] A jury must, however, "reach a unanimous verdict about the specific crime that the defendant committed."[23]

Due process prevents us from affirming a conviction based on legal or factual grounds that were not submitted to the jury.[24]

---

[21]*Moff*, 131 S.W.3d at 490.

[22]*Campbell v. State*, 426 S.W.3d 780, 786 (Tex. Crim. App. 2014).

[23]*Cosio v. State*, 353 S.W.3d 766, 771–72 (Tex. Crim. App. 2011) (discussing three scenarios in which nonunanimity issues arise and citing cases illustrating those scenarios); *see Ngo v. State*, 175 S.W.3d 738, 744–46 (Tex. Crim. App. 2005) (holding that stealing a credit card, receiving the card while knowing it had been stolen, and presenting the card to obtain a fraudulent benefit were all separate criminal acts that required jury unanimity); *Francis v. State*, 36 S.W.3d 121, 124–25 (Tex. Crim. App. 2000) (op. on reh'g) (holding that a defendant's touching the complainant's breasts in one incident and her genitals in another incident are separate criminal acts and could not be charged in the disjunctive); *see also Pizzo v. State*, 235 S.W.3d 711, 714–17 (Tex. Crim. App. 2007) (explaining how to identify essential elements of offense by diagramming statutory text according to rules of grammar); *Stuhler v. State*, 218 S.W.3d 706, 718–19 (Tex. Crim. App. 2007) (applying diagramming technique).

[24]*Malik*, 953 S.W.2d at 238 n.3.

**Assault–Family Violence**

In his first issue, Appellant challenges the sufficiency of the evidence to support his conviction for assault–family violence by impeding breath. In weighing the sufficiency of the evidence, an appellate court must consider even improperly admitted evidence.[25] Although the trial court committed reversible error by admitting Officer Johnson's testimony regarding the aggravating factor of impeding normal breathing and Tanja's statements attributing her injuries to Appellant, Officer Johnson's testimony must be considered in determining the sufficiency of the evidence.[26] She testified that Tanja said that Appellant choked her and that he was upset because she was leaving him. The trial court admitted photographs of Tanja's injuries. We hold that the evidence was sufficient to support Appellant's conviction for assault of a family member impeding normal breathing.[27]

We overrule Appellant's first issue.

**Kidnapping**

In his fifth issue, Appellant challenges the sufficiency of the evidence to prove kidnapping. Appellant was charged with aggravated kidnapping. The jury

---

[25]*Moff*, 131 S.W.3d at 488 (In applying the *Jackson* sufficiency review, an appellate court "must consider all evidence which the jury was permitted, whether rightly or wrongly, to consider." (citation and internal quotation marks omitted)).

[26]*See id.*

[27]*See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(2)(B) (West Supp. 2014).

found him guilty of the lesser-included offense of kidnapping by intentionally and knowingly abducting Tammy H. by restricting her movements without her consent so as to substantially interfere with her liberty, by moving her from one place to another or confining her, with the intent to prevent her liberation, by secreting or holding her in a place she was not likely to be found. Deadly force was not mentioned in the application charge of kidnapping but was present in the aggravated kidnapping application charge and in the abstract portion of the charge.

A person commits the offense of kidnapping if he intentionally or knowingly abducts another person.[28] "Abduct" means to restrain a person with intent to prevent her liberation by using or threatening to use deadly force or by secreting or hiding her in a place where she is not likely to be found.[29] "Restrain" means to restrict a person's movement without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person.[30]

Tammy testified that she and Appellant hit each other. Tammy testified that she hit Appellant first but admitted that her witness statement did not contain that detail, nor had she told the police that information. She testified that she

---

[28]Tex. Penal Code Ann. § 20.03(a) (West 2011).

[29]*Id.* § 20.01(2)(A), (B).

[30]*Id.* § 20.01(1).

remembered telling officers that she was scared but also testified that she did not know why. She then clarified that she had been scared because "of what had just happened" (the altercation and her abduction) and that she had been concerned because her daughter left during the altercation. Tammy equivocated about whether she had told police that Appellant had threatened to kill her, her daughter, and LaQuandra.

LaQuandra heard Tammy tell Appellant that she did not want to go with him. LaQuandra opened the back passenger door of Appellant's pickup and stood between Appellant and Tammy as they fought. As the fight continued, LaQuandra ran upstairs to the apartment and called 9-1-1. Appellant entered the apartment, grabbed a knife, and cornered LaQuandra. He asked LaQuandra if she had called the police. LaQuandra testified that she felt as though Appellant was going to stab her. And although Tammy testified that Appellant dropped the knife after she called his name and that she then said, "[C]ome on, let's go," LaQuandra and Tammy's daughter both testified that Appellant grabbed Tammy by the neck and said, "[L]et's go," and that Tammy did not want to go with him. Tammy testified that Appellant "wanted [her] to go at first, and [she] didn't want to go, [but she was] not forced" to go with Appellant.

Officers Derek Kirkwood and Carson Crow received a dispatch that included a vehicle description. En route to the disturbance site, Officer Kirkwood saw the described vehicle and made a traffic stop about half a mile from LaQuandra's apartment. When Officer Crow arrived to assist, he ordered the

15

driver, Appellant, out of the vehicle. Tammy, the front passenger, was upset and crying, according to Officer Kirkwood. The officer spoke to her near the rear of the patrol vehicle. She told him that Appellant got mad when she did not want to go with him to his house and that she was in fear for her life because Appellant had grabbed her at knifepoint and punched her in the face several times. Tammy told the officer that Appellant had pointed a knife at her, her daughter, and LaQuandra and said that he would kill them and not to call the police. Then he took her to his truck at knifepoint.

As the State points out, quoting the Texas Court of Criminal Appeals, "It is up to the jury to distinguish between those situations in which a substantial interference with the victim's liberty has taken place and those situations in which a slight interference has taken place."[31] We agree with the State that the jury could have reasonably concluded that Appellant hit Tammy, restricted her movements without her consent, and substantially interfered with her liberty.

We do not agree that Appellant secreted or held Tammy in a place where she was not likely to be found. Appellant told Tammy in front of witnesses that he intended to take her to his home. But the indictment also alleged an alternate manner and means of abduction: that Appellant used or threatened to use deadly force. Officer Kirkwood testified that Tammy said that Appellant accomplished the kidnapping by saying that he would kill her.

---

[31] *Hines v. State*, 75 S.W.3d 444, 448 (Tex. Crim. App. 2002).

16

The abstract portion of the charge explained,

A person commits the offense of Kidnapping if he intentionally or knowingly abducts another person.

A person commits Aggravated Kidnapping if the person commits kidnapping as defined above and the kidnapping is committed with the intent to (1) facilitate the commission of a felony, or (2) terrorize a person.

A person commits aggravated kidnapping if the person commits kidnapping as defined above and the person uses or exhibits a deadly weapon during the commission of the offense.

"Abduct" means to restrain a person with intent to prevent her liberation by (1) secreting or holding her in a place where she is not likely to be found, or (2) using or threatening to use deadly force.

The jury was instructed to consider the offense of kidnapping if the jury was not convinced beyond a reasonable doubt that Appellant was guilty of aggravated kidnapping:

If you find from the evidence beyond a reasonable doubt that on or about the 13th day of August, 2012, in Denton County, Texas, [Appellant] did then and there intentionally or knowingly abduct Tammy H[.] by restricting the movements of said Tammy H[.] without her consent so as to substantially interfere with her liberty, by moving her from one place to another or confining her, with the intent to prevent her liberation, by secreting or holding her in a place she was not likely to be found; then you will find the defendant guilty of the lesser included offense of Kidnapping.

The jury did not find Appellant guilty of aggravated kidnapping. They specifically rejected that offense. They did find Appellant guilty of kidnapping. While the "deadly force" theory was in the abstract portion of the jury charge and the application part of the aggravated kidnapping charge, it was absent from the

17

application paragraph on the lesser-included offense of kidnapping, the charge answered affirmatively by the jury.  But that is of no legal significance.

As we understand the mandate from the Texas Court of Criminal Appeals, we must uphold the jury's verdict if the evidence supports any manner and means of committing the offense if it would be included in a hypothetically correct jury charge as measured by the hypothetically correct indictment.[32]  Here, threatening to use deadly force is a statutory manner and means of abducting,[33] it is alleged in the indictment, and it is supported by the evidence.[34]  It would therefore be included in a hypothetically correct jury charge.[35]  The record contains ample evidence that Appellant abducted Tammy by threatening to use deadly force.  She told Officer Kirkwood that when she told Appellant that she did not want to go with him to his house, he became very angry and told her that he would kill her.  She also told Officer Kirkwood that she left with Appellant unwillingly.  That is sufficient evidence of abduction by threatening to use deadly force.  We overrule Appellant's fifth issue.

---

[32]*See Gollihar v. State*, 46 S.W.3d 243, 256–57 (Tex. Crim. App. 2001); *Malik*, 953 S.W.2d at 240.

[33]Tex. Penal Code Ann. § 20.01(2)(B).

[34]*See Malik*, 953 S.W.2d at 240.

[35]*See id.*

**Aggravated Assault**

In his seventh issue, Appellant challenges the sufficiency of the evidence to support his conviction of aggravated assault of LaQuandra. He contends that "the evidence was insufficient to find that there was a deadly weapon used or that the evidence was sufficient to sustain the conviction for aggravated assault." He specifically challenges only the deadly weapon element, arguing that the evidence is insufficient to support the jury's conclusion that the knife he used to threaten LaQuandra was a deadly weapon. He correctly states that a knife is not a deadly weapon per se.[36]

LaQuandra testified that when Appellant assaulted Tammy outside, LaQuandra ran to her apartment and called the police. Appellant entered the apartment, grabbed a knife from the kitchen, and cornered LaQuandra, demanding to know if she had called the police. LaQuandra identified State's Exhibit 35, which was admitted into evidence, as a photograph of the knife that Appellant used to threaten her. She testified that Appellant also tried to stab her with the knife. The jury saw a photograph of the knife and the knife itself.

LaQuandra and Tammy's daughter testified that Appellant held the knife as if he was going to stab LaQuandra, that he was "jigging" the knife at her, and that he was blocking her only exit; she was cornered. Appellant told LaQuandra that he could kill her, and she believed that he would. The jury

---

[36] *Polk v. State*, 693 S.W.2d 391, 395 (Tex. Crim. App. 1985).

19

also heard Officer Kirkwood testify that Tammy told him that Appellant was thrusting a knife toward LaQuandra in the apartment and saying that he would kill her and for her not to call the police.

The jury could have properly determined, based on the knife's appearance, that it was capable of causing serious bodily injury or death.[37] Additionally, LaQuandra's testimony was evidence that Appellant was close enough to her to have reached her with the knife. We hold that the evidence was sufficient to support the jury's determination that Appellant used the knife as a deadly weapon and that, in the manner of its use or intended use, it was capable of causing death or serious bodily injury. We further hold that the evidence is sufficient to support Appellant's conviction for aggravated assault.[38] We therefore overrule Appellant's seventh issue.

**Enhancement Paragraph**

In his third, sixth, eighth, and ninth issues, Appellant argues that the evidence was insufficient to show that he had a prior murder conviction, the jury was improperly instructed regarding the enhancement paragraph, and counsel

---

[37]See *Robertson v. State*, 163 S.W.3d 730, 731, 734 (Tex. Crim. App. 2005) (holding that "testimony at trial describing the switchblade knife" was not necessary to support deadly weapon finding because the knife was introduced into evidence and the fact-finder "had the opportunity to examine the weapon and ascertain for itself whether the weapon had physical characteristics that revealed its deadly nature").

[38]*See* Tex. Penal Code Ann. § 22.02(a)(2) (West 2011); *see also* § 22.01(a)(2).

20

was ineffective for pleading true to the enhancement. In his fourth issue, he argues regarding the harassment-of-a-public-servant case that the trial court improperly instructed the jury that he had pled true to the enhancement paragraph of "attempted murder" in the indictment.

The enhancement paragraph of four of the indictments alleged a prior murder conviction, and the remaining indictment (the harassment-of-a-public-servant indictment) alleged a prior drug conviction. We see no objections to the indictments in the records. The State gave notice of its intent to enhance Appellant's punishment with an attempted murder conviction several months before trial. The State also made an opening statement on punishment. The prosecutor stated without objection,

> I think you kind of heard from the witness stand everybody that we would have had called, anyway. And introduce two judgments, the first being the attempted murder that [Appellant] just pled true to in which he was sentenced to 15 years, and then another judgment for delivery of a controlled substance, a first-degree felony, back also in 1991 in which [he] was also sentenced to 15 years.

Defense counsel stated to the jury,

> Ladies and gentlemen, thank you for being here all week, and thank you for your service.
>
> [The prosecutor] is correct, there are two judgments, one for attempted murder and one for delivery of a controlled substance. Those sentences were served by [Appellant] at the same time. So it wasn't a 30-year sentence, it was 15. He has done his time for those offenses. He has paid his debt to society for that. He completed his parole successfully.

21

Even though the record does not contain the verbiage of Appellant's plea to the enhancement paragraph, the State averred on the record that it intended to "introduce two judgments, the first being the attempted murder that [Appellant] just pled true to in which he was sentenced to 15 years," and Appellant conceded both the attempted murder conviction and the drug conviction in arguing to the jury that he was not a career criminal and had paid his debt to society for those crimes. Although Appellant argues that the evidence was insufficient to show that he had a prior murder conviction, whether there was evidence of a prior murder conviction is irrelevant. It was undisputed that Appellant was asked to plead not to a murder enhancement allegation but to an attempted murder enhancement allegation. His plea of true is sufficient evidence to support the attempted murder allegation and finding.[39]

Appellant correctly points out that the jury was instructed to return a verdict of true to the enhancement paragraph as alleged in the indictment. But the instruction also said,

> The Enhancement Paragraph of the indictment alleges that [Appellant] was convicted on or about the 28th day of August, 1992, in Cause No. F-91-846-D in the 362nd Judicial District Court of Denton County, Texas, of the offense of Attempted Murder, a felony, and that such conviction had become final prior to the commission of the offense of which you have just found him guilty. To this

---

[39] *See Wilson v. State*, 671 S.W.2d 524, 526 (Tex. Crim. App. 1984) ("[A] plea of 'true' does constitute evidence and sufficient proof to support the enhancement allegation.").

22

allegation in the Enhancement Paragraph of the indictment the defendant has pleaded "true."

Although the State had given Appellant notice of its intent to use his prior attempted murder conviction to seek enhancement of each of the five offenses for which he was indicted, the indictments were never amended to reflect a prior conviction of attempted murder. But Appellant made no objections to the indictments or jury instruction on this issue, he pled true to the enhancement by pleading true to the prior attempted murder conviction, and he conceded the prior conviction in addressing the jury.

Although the indictment must properly set out the elements of the offense alleged for prosecution, the Texas Court of Criminal Appeals has abandoned its former position regarding the necessity of sufficiently and accurately pleading the elements of enhancement paragraphs in the indictment.[40] Last year, that court provided a historical perspective regarding notice of enhancement allegations:

> This Court's view regarding the type and degree of notice to which a defendant is entitled has changed considerably over the last several decades. Forty years ago, this Court required the State to allege every conviction that it intended to use for enhancement purposes in the indictment or else forgo use of those convictions for enhancement purposes. In light of this requirement, this Court held that a defendant was harmed when his enhanced punishment was premised on an invalid prior conviction even when the record revealed another prior conviction not alleged in the indictment that could have properly been used to enhance.

---

[40] *See White v. State*, 500 S.W.2d 529, 530 (Tex. Crim. App. 1973), *overruled by Brooks v. State*, 957 S.W.2d 30, 34 (Tex. Crim. App. 1997).

23

But times have changed. This Court no longer requires that notice be provided by allegations in a charging instrument, nor does it require that it be given prior to trial. In a direct-appeal context, this Court has held that a defendant's federal constitutional due-process rights are not violated by post-guilt, pre-punishment-phase notice of the State's intent to enhance his punishment with a prior conviction. Even when a defendant receives notice after he has been convicted, his due-process rights are not violated as long as notice is sufficient to enable him to prepare a defense to them, and he is afforded an opportunity to be heard. In determining whether [an] appellant received sufficient notice of the State's intent to enhance punishment, we look to the record to identify whether [the] appellant's defense was impaired by the timing of the State's notice.[41]

The problem in the instant case appears not to be lack of notice, but, rather, the fact that in each case the enhancement allegation to which Appellant was asked to enter his plea was not contained in the indictment, despite the fact that the jury was instructed,

> The Enhancement Paragraph of the indictment alleges that [Appellant] was convicted on or about the 28th day of August, 1992, in Cause No. F-91-846-D in the 362nd Judicial District Court of Denton County, Texas, of the offense of Attempted Murder, a felony, and that such conviction had become final prior to the commission of the offense of which you have just found him guilty. To this allegation in the Enhancement Paragraph of the indictment the defendant has pleaded ''true.''

> You are instructed to find the allegations contained in the Paragraph of the indictment to be true as charged.

The Texas Court of Criminal Appeals established the standard of review for jury charge error:

---

[41] *Ex Parte Parrott*, 396 S.W.3d 531, 537 (Tex. Crim. App. 2013) (citations and selected internal punctuation marks omitted).

If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is "calculated to injure the rights of defendant," which means no more than that there must be some harm to the accused from the error. In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless.

On the other hand, if no proper objection was made at trial and the accused must claim that the error was "fundamental," he will obtain a reversal only if the error is so egregious and created such harm that he "has not had a fair and impartial trial"—in short "egregious harm."[42]

Appellant made no objection to the punishment jury charge but now complains that the trial court reversibly erred by submitting to the jury an improper jury instruction. Even if we presume that the instruction was erroneous, because Appellant failed to object, error is not reversible unless the resultant harm rises to an "egregious" level.[43] Given the record as a whole, we hold that any harm arising from the jury instruction cannot be considered egregious in that it did not deny Appellant a fair and impartial trial.[44]

As for Appellant's contention that trial counsel rendered ineffective assistance by entering a plea of true to the enhancement allegation in each case, "[u]nder normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or

---

[42] *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g).

[43] See *id.*

[44] *See id.*

strategic decisionmaking as to overcome the presumption that counsel's conduct was reasonable and professional."[45] That is the situation here. Whether as an enhancement or as punishment evidence, the jury was going to hear about Appellant's criminal record. Trial counsel apparently decided on a strategy of openness and honesty with the jury regarding Appellant's criminal history, arguing that he took responsibility for his actions and had paid his debt for his misdeeds. We cannot say that strategy constituted ineffective assistance of counsel.[46]

We therefore overrule Appellant's third, fourth, sixth, eighth, and ninth issues.

**Improper Punishment Range for Kidnapping**

In his tenth issue, Appellant contends that the trial court erred in instructing the jury on an erroneous punishment range, that his trial counsel was ineffective for not objecting to the instruction, and that the kidnapping case should be remanded to the trial court for a new trial on punishment only. The State agrees

---

[45] *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

[46] *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999); *see also Hudson v. State*, No. 01-12-01121-CR, 2014 WL 3738047, at *3 (Tex. App.—Houston [1st Dist.] July 29, 2014, no pet.) (mem. op., not designated for publication) (holding that counsel's failure to object to even unadjudicated offenses can be trial strategy and listing similar cases).

that the trial court instructed the jury on the wrong punishment range and that the kidnapping case should be remanded for a new punishment trial.

Although Appellant was charged with aggravated kidnapping, the jury convicted him of the lesser-included offense of kidnapping. Kidnapping is a third-degree felony with a confinement range of two to ten years.[47] Appellant pled true to the enhancement paragraph. The range of punishment for kidnapping enhanced by a single prior felony conviction is two to twenty years' confinement and a fine up to $10,000.[48] The jury charge, however, instructed the jury that the range of confinement was five to ninety-nine years. Although the maximum lawful period of confinement for kidnapping enhanced by a single prior felony conviction is twenty years, the jury assessed Appellant's punishment at thirty years' imprisonment, and the trial court sentenced Appellant accordingly.

A sentence falling outside the range of punishment is illegal and therefore void.[49] Accordingly, we vacate the sentence imposed for the kidnapping conviction and remand this case for a new trial on punishment. Because our holding is dispositive, we do not reach the remainder of Appellant's tenth issue.[50]

---

[47]Tex. Penal Code Ann. §§ 12.34, 20.03 (West 2011).

[48]*Id.* § 12.33 (West 2011), § 12.42(a) (West Supp. 2014).

[49]*Mizell v. State*, 119 S.W.3d 804, 805–06 (Tex. Crim. App. 2003).

[50]*See* Tex. R. App. P. 47.1.

27

**Conclusion**

Having sustained Appellant's second issue in part, we reverse the trial court's judgment in the assault–family violence case, cause number 02-13-00493-CR (F-2010-0994-D), and remand that case for a new trial. Having held Appellant's sentence void in the kidnapping case, cause number 02-13-00495CR (F-2012-2483-D), but having held the evidence sufficient to support the conviction, we affirm the trial court's judgment of conviction but reverse the trial court's judgment on punishment and remand that case solely for a new trial on punishment. Having overruled Appellant's remaining issues, we affirm the three remaining judgments.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

WALKER, J., concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: January 29, 2015

28